UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COWTOWN FOUNDATION, INC., *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>    *Defendants*. | No. 21-cv-1342 (DLF) |

**MEMORANDUM OPINION**

Before the Court is the plaintiffs' Motion for a Preliminary Injunction, which seeks to prevent the Department of Agriculture (Department) from dispensing $11 billion under unspecified provisions of the American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4 (2021). Dkt. 8, at 3. The plaintiffs contend that the Department has unlawfully delayed in dispensing funds dedicated to debt relief for socially disadvantaged farmers. Pub. L. No. 117-2, § 1005(a)(2), 135 Stat. at 12–13. Because the plaintiffs lack Article III standing, the Court will deny their motion for preliminary injunction.

**I.      BACKGROUND**

Congress passed the American Rescue Plan Act to support the country's recovery from the COVID-19 pandemic. Title I, Subtitle A of the Act, which is titled, "Agriculture," provides aid related to the agricultural sector. For example, section 1001 appropriates funds "to purchase food and agricultural commodities," *id.* § 1001(b)(1), 135 Stat. at 10; to distribute those resources "to individuals in need," *id.* § 1001(b)(2), 135 Stat. at 10; and for "grants and loans" that support "food and agricultural supply chain[s]," *id.* § 1001(b)(3)–(4), 135 Stat. at 10.

Section 1002, in turn, authorizes grants to improve rural health care, including to fund "vaccine distribution." *Id.* § 1002(b)(1), 135 Stat. at 11.  Finally, and most relevant to this action, section 1005 authorizes the Secretary of Agriculture (Secretary) to pay each "socially disadvantaged farmer" an amount "up to 120 percent of [their] outstanding indebtedness" on any farm loan that the Secretary either made or guaranteed.  *Id.* § 1005(a)(2), 135 Stat. at 12.  For this purpose, the Act defines a "socially disadvantaged farmer" as a "a farmer . . . who is a member of a socially disadvantaged group," or "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group."  *Id.* § 1005(b)(3), 135 Stat. at 13; 7 U.S.C. § 2279(a)(5)–(6).  All together, one estimate places the total appropriations in Title I, Subtitle A at approximately $10.4 billion.  *See*, *e.g.*, *What's in the American Rescue Plan Act of 2021 for Agriculture?*, Am. Farm Bureau Fed'n (Mar. 8, 2021), https://www.fb.org/market-intel/whats-in-the-american-rescue-plan-act-of-2021-for-agriculture.

Plaintiffs Cowtown Foundation, Inc., a "Tennessee Corporation that represents Socially Disadvantaged Farmer members from across the United States," Compl. ¶ 16, Dkt. 1, and Leroy Smith, Jr., a "Black, Socially Disadvantaged Farmer," *id.* ¶ 17, filed this complaint on May 17, 2021.  *Id..* ¶¶ 13–15.  Smith alleges that he "has suffered ongoing discrimination and adverse action against him by the respondents."  *Id.* ¶ 17.  In particular, he alleges that the Department slow-rolled his loan applications, attempted to collect on a debt that he already discharged, and never answered his attendant complaints of discrimination.  *Id.* ¶¶ 18–28.  Smith states that these actions, which took place between 1993 and 2010, caused him to lose his "home, land, equipment, non-farming business, and affiliated property."  *Id.* ¶ 27.

The plaintiffs' Complaint raises a variety of statutory and contractual claims, including that the Department has structured its internal complaint process to prevent socially

disadvantaged farmers from obtaining relief, *id.* ¶¶ 6–7, 32; that the Department failed to give Smith "a final agency decision from [his] 2009 [anti-discrimination] complaint," *id.* ¶ 29; and that the Department has breached the terms of the consent decree in *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999), *id.* ¶¶ 40–43. The plaintiffs also request a wide array of remedies. First, they seek a "formal hearing on the Merits" of Smith's 2009 anti-discrimination claim. *Id.* at 22 ¶ 1. Second, they seek to declare "all Socially Disadvantaged Farmers' loans written off," pursuant, the complaint implies, to section 1005 of American Rescue Plan Act. *Id.* ¶ 2. Finally, the plaintiffs seek additional forms of injunctive relief, which include requiring the Secretary to "release all liens" associated with those loans, *id.* ¶ 3; to "return all offset money taken" through manipulation of complaint procedures, *id.* ¶ 4; and to declare that land owned by socially disadvantaged farmers is "forever barred" from certain collection activities, *id.* at 23 ¶ 5. The plaintiffs do not identify any authority, statutory or otherwise, to authorize these other forms of relief. *See id.* at 22–23, ¶¶ 3–5.

On June 28, 2021, the plaintiffs moved for a preliminary injunction. Dkt. 8. Without abandoning their claims regarding the Department's internal complaint process, Smith's individual complaint, or the *Pigford* consent decree, the plaintiffs' motion focuses solely on the administration of the American Rescue Plan Act. The plaintiffs allege that no socially disadvantaged farmer has received debt relief under section 1005 of the Act, but that "billions of dollars in emergency assistance have been disbursed to primarily White farmers." *Id.* at 4. The plaintiffs also allege that the Department has provided socially disadvantaged farmers no indication of when they can expect to receive debt relief, and the plaintiffs imply that the Department has expended some of the funds appropriated under section 1005 for unrelated purposes. *Id.* On this basis, the plaintiffs ask the Court to "prevent the Department of

Agriculture from dispersing $11 billion dollars to farmers," pending its litigation of the above anti-discrimination claims. Dkt. 8, at 3. Although the plaintiffs do not identify the exact expenditures that they seek to enjoin, the Court infers that the plaintiffs reference the approximately $10.4 billion appropriated under the "Agriculture" subtitle of the American Rescue Plan Act.

## II.  LEGAL STANDARD

The federal judicial power extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2; *see*, *e.g.*, *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). The familiar doctrine of standing "gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, plaintiffs must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. And because "standing is not dispensed in gross," plaintiffs must "demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (internal quotation marks omitted). Even if no party has raised standing, the Court must raise the issue *sua sponte*, *see id.* at 93; *Cierco v. Mnuchin*, 857 F.3d 407, 415–16 (D.C. Cir. 2017), because "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

As the parties seeking to invoke federal jurisdiction, plaintiffs Cowtown and Smith "bear[] the burden" of establishing standing. *Spokeo*, 136 S. Ct. at 1547. To do so, they must establish each element of standing "in the same way as any other matter on which [they] bear[] the burden of proof." *Bennett v. Spear*, 520 U.S. 154, 167–68 (1997). In the context of a motion for a preliminary injunction, the plaintiffs must show a "substantial likelihood of standing" under the same "heightened standard" that applies when "evaluating a motion for summary judgment." *EPIC. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912–13 (D.C. Cir. 2015)). Thus, the plaintiffs "cannot rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts that, if taken to be true, demonstrate a substantial likelihood of standing." *Id.* (quoting *Lujan*, 504 U.S at 561) (internal quotation marks omitted).

## III.   ANALYSIS

The plaintiffs lack standing to challenge the administration of section 1005 because they have failed to show the substantial likelihood of an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). Here, the plaintiffs allege that the Department is acting unlawfully in administering the American Rescue Plan Act. But they provide no "affidavit or other evidence" to show that they have personally suffered an actual, particularized injury. *See Presidential Advisory Comm'n on Election Integrity*, 878 F.3d at 377; *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560).

To begin, Smith has failed to show a substantial likelihood of injury in fact. Although Smith alleges that the Department failed to resolve his decade-old anti-discrimination complaint,

he does not allege any injury related to the American Rescue Plan Act. Indeed, there is no evidence as to whether Smith is eligible for any payment under section 1005, whether he has received a payment under that section, or whether any denial or delay in payment is traceable to misconduct by the Department, as opposed to compliance with other district courts' injunctions.[1] More broadly, although Smith describes himself as a socially disadvantaged farmer, Compl. ¶ 17, Dkt. 1, he has provided no "affidavit or other evidence" to show either that he is still farming or that he has any outstanding agricultural loans. *Presidential Advisory Comm'n on Election Integrity*, 878 F.3d at 377. To the contrary, the plaintiffs' complaint states that Smith "was no longer farming" between 2000 and 2004, Compl. ¶ 23, Dkt. 1; that the USDA "removed [his] debt from their records" in 2010, *id.* ¶ 27; and that, by 2010, Smith had lost both his "land" and his "equipment," *id.* On this record, Smith has not shown a substantial likelihood that the Department's administration of section 1005 injured him.

Cowtown, too, has failed to show a substantial likelihood of standing. As an organization, Cowtown "can assert standing on its own behalf, as an organization, or on behalf of its members, as associational standing." *EPIC v. United States Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019). To establish standing on its own behalf, Cowtown must show a "concrete and demonstrable injury to [its] activities that is more than simply a setback to [its] abstract social interests." *Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011). But Cowtown has communicated only a social interest in representing socially disadvantaged farmers, and though it represents that it pursues that interest with "very little

---

[1] At least other two district courts have enjoined the Secretary from forgiving any loans pursuant to section 1005 on the ground that affording special treatment to socially disadvantaged farmers—a group defined in part by their racial identity, *see* 7 U.S.C. § 2279(a)(6)—is unconstitutional race discrimination. *See Faust v. Vilsack*, No. 21-C-548, 2021 WL 2409729, at *3–5 (E.D. Wis. June 10, 2021); *Wynn v. Vilsack*, No. 3:21-CV-514, 2021 WL 2580678, at *3–12, 17–18 (M.D. Fla. June 23, 2021).

resources," Compl. ¶ 16, Dkt. 1, that alone is not sufficient to constitute any injury to its own activities.  Neither has Cowtown established a substantial likelihood of associational standing.  To do so, Cowtown must show that at least one of its members "has standing to sue in his or her own right," that the interests it seeks to protect are "germane to its purpose," and that the claim asserted and relief sought do not require "the participation of an individual member in the lawsuit."  *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005).  To date, Cowtown has identified only one of its members: its co-plaintiff Smith.  Because Smith has not established standing as an individual, Cowtown cannot establish standing as an association.  *See Am. Libr. Ass'n*, 401 F.3d at 492.

It is well-settled that any "party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).  Here, because the plaintiffs have failed to make that showing, the Court has no cause to address whether Cowtown would be entitled to receive an injunction on the merits.  *See Presidential Advisory Comm'n on Election Integrity*, 878 F.3d at 380; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (describing the "clear showing" required to obtain a preliminary injunction on the merits).  And because the plaintiffs' motion for a preliminary injunction focuses entirely on the administration of section 1005 and does not press the plaintiffs' other claims for relief, Dkt. 8, the Court need not address those claims here.

## CONCLUSION

For the foregoing reasons, the Court will deny the plaintiffs' motion for a preliminary injunction. A separate order accompanies this memorandum opinion.

*[signature]*
_____
DABNEY L. FRIEDRICH
United States District Judge

August 17, 2021